**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VANCE EDWARD JOHNSON,                )   No. C 02-5537 CW (PR)
                                     )
            Petitioner,              )
                                     )   ORDER DENYING PETITION FOR A
      v.                             )   WRIT OF HABEAS CORPUS AND
                                     )   ADDRESSING PENDING MOTIONS
D. L. RUNNELS, Warden,               )
                                     )   (Docket nos. 49, 52, 53)
            Respondent.              )
_____ )

INTRODUCTION

Petitioner Vance Edward Johnson, a prisoner of the State of California who is incarcerated at Folsom State Prison, filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  After denying Respondent's motion to dismiss the petition as untimely, the Court ordered Respondent to show cause why the petition should not be granted.  Respondent has filed an answer to the petition and a memorandum of points and authorities and exhibits in support thereof.  Petitioner has filed a traverse to the answer and exhibits in support thereof.  The Court now addresses the merits of the claims.

PROCEDURAL HISTORY

In 1999, Petitioner was tried and convicted in Santa Clara County Superior Court.  Under California's Three Strikes Law he was sentenced on July 1, 1999, to a prison term of 150 years to life for various counts of carjacking, second degree robbery, attempted second degree robbery, being a felon in possession of a firearm,

**United States District Court**
For the Northern District of California

1 and enhancements for personal use of a firearm.  The trial court

2 also imposed a restitution fine of $10,000.

3   Petitioner filed a direct appeal of the conviction and

4 sentence and the State court of appeal affirmed the judgment in all

5 respects in a written opinion on September 14, 2000, except for the

6 trial court's imposition of the restitution fine, which was

7 vacated.  Petitioner sought timely review of the appellate court's

8 decision affirming the judgment.  The California Supreme Court

9 denied review on December 20, 2000.  On December 20, 2001,

10 Petitioner timely filed his first federal habeas corpus petition in

11 this Court, <u>Johnson v. Runnels</u>, C 01-4969 CW (PR).  The petition

12 was dismissed without prejudice on March 4, 2002, for failure to

13 exhaust State remedies.

14   Petitioner then filed a State habeas corpus petition in the

15 California Supreme Court, which summarily denied the petition on

16 September 18, 2002, without citation or comment.  On October 18,

17 2002, Petitioner filed a motion for reconsideration of the denial

18 of the habeas petition.  On October 24, 2002, the clerk of the

19 California Supreme Court wrote to Petitioner explaining that the

20 denial of his habeas petition was final and no motion for

21 reconsideration would be entertained.

22   The present petition was filed on November 21, 2002.

23 Petitioner raises twenty-five claims for relief, all of which

24 have been exhausted for the purpose of federal habeas corpus

25

26

27

28

review.[1]

## STATEMENT OF FACTS

In its written opinion, the California Court of Appeal summarized the factual background as follows:

> On July 10, 1998, at approximately 11:00 p.m., Teresa Cusick parked her 1988 Honda Accord in front of her house in Mountain View.  In the car with Cusick was her cousin, Julie Lingenfelter, who was sitting in the front passenger seat.  As Cusick was removing the car keys from the ignition, defendant approached the car from the passenger side, leaned on the door, pointed a gun at Cusick's face, and said: "Drop your purse, put your keys in the ignition, and get out of the car."  Although defendant was wearing a black nylon mask, Cusick and Lingenfelter were able to see "a good portion of his face, his eyes, cheeks, and a little bit of the nose."  Afraid that defendant would shoot her, Cusick put the keys in the ignition and got out of the car.  Lingenfelter also got out of the car.  Defendant walked around the rear of the car and got in the driver's seat.
>
> After Cusick had walked a few feet away from the car, she turned around and, addressing defendant, said: "Can I just, please, have my purse?"  Defendant replied he needed the money.  Cusick said: "I don't have any money in my purse.  Can I, please, have my purse?"  Defendant sarcastically responded: "No.  Don't worry, I'll bring it right back."  Defendant then drove off with the lights off.  Inside Cusick's purse were her wallet with her checkbook, driving license, Visa credit card, ATM card, and some miscellaneous items.
>
> Cusick and Lingenfelter identified defendant as the carjacker both at the preliminary hearing and at trial.  Cusick did not want to pick anyone at the photo lineup because "in the photographs, it was really hard to tell," "the photographs just weren't lifelike," and Cusick, who "couldn't say for sure that was the guy," did not "want to convict an innocent person."  Cusick explained that what she was shown at the photo lineup were copies of

---

[1]Originally, Petitioner raised twenty-six claims for relief, but he has withdrawn voluntarily claim number seven.

United States District Court

For the Northern District of California

photographs, "[a]nd a copy of a photograph is not as lifelike as a photograph." Lingenfelter explained she had a "really hard time" picking out one that looked like defendant in the photo lineup because the people in the lineup, unlike defendant during the carjacking, "were all wearing glasses."

On July 27, 1998, Cusick's car was found abandoned in Berkeley. Among the items retrieved from the car were a can of pears and a black nylon mask that looked like the mask worn by the carjacker during the carjacking. On the label of the pear can was found a latent print from defendant's left middle finger. A DNA analysis of the cell material recovered from the black nylon mask identified defendant as the donor. Cynthia Hall, who was qualified as an expert in DNA analysis, testified that the probability of finding the same pattern in individuals selected at random from the ethnic group to which defendant belonged, was "1 in 2 times 10 to the 11th" power.

On July 13, 1998, three days after the carjacking of Cusick's car, defendant was arrested with Angela Grubbs in another carjacked vehicle. When the police searched defendant's pockets, they found Cusick's driver's license and keys. The officers also found inside the console in the front seat a 9mm Luger semiautomatic pistol. Cusick and Lingenfelter identified the gun as "the gun that [defendant] used that night." Defendant was wearing a black baseball cap at the time of his arrest. Cusick testified that at the time of the carjacking defendant was wearing a black baseball cap.

People v. Johnson, B9841054, 2-3 (Sep. 14, 2000) (Opinion).

STANDARD OF REVIEW

A federal writ of habeas corpus may not be granted with respect to any claim that was adjudicated on the merits in State court unless the State court's adjudication of the claims: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in

the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may

grant the writ if the state court arrives at a conclusion opposite

to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the Supreme] Court

has on a set of materially indistinguishable facts."  Williams v.

Taylor, 529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable

application' clause, a federal habeas court may grant the writ if

the state court identifies the correct governing legal principle

from [the Supreme] Court's decisions but unreasonably applies that

principle to the facts of the prisoner's case."  Id. at 413.  The

only definitive source of clearly established federal law under 28

U.S.C. § 2254(d) is in the holdings of the Supreme Court as of the

time of the relevant State court decision.  Id. at 412.

In determining whether the State court's decision is contrary

to, or involved an unreasonable application of, clearly established

federal law, a federal court looks to the decision of the highest

State court to address the merits of a petitioner's claim in a

reasoned decision.  LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th

Cir. 2000).  It also looks to any lower court decision examined or

adopted by the highest State court to address the merits.  See

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

Williams v. Rhoades, 354 F.3d 1101, 1106 (9th Cir. 2004) (because State appellate court examined and adopted some of the trial court's reasoning, the trial court's ruling is also relevant).

Where the State court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, a review of the record is the only means of deciding whether the State court's decision was objectively reasonable.  See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Greene v. Lambert, 288 F.3d 1081, 1088 (9th Cir. 2002).  When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the State court's decision was an unreasonable application of clearly established federal law.  Himes, 336 F.3d at 853; accord Lambert v. Blodgett, 393 F.3d 943, 970 n.16 (9th Cir. 2004).

If constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'"  Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

DISCUSSION

I.   WRONGFUL ADMISSION OF EVIDENCE

     A.   Background

     Petitioner raises numerous claims based on the erroneous admission of evidence at trial.  In the first three claims he

**United States District Court**
For the Northern District of California

argues that the trial court erred when it qualified a prosecution witness as an expert on DNA evidence and allowed her to testify about the DNA evidence gathered in Petitioner's case.  These claims were raised on appeal and denied in a reasoned opinion by the California Court of Appeal.  The remainder of Petitioner's wrongful admission of evidence claims address the trial court's admission of certain physical evidence, of evidence of prior bad acts, and of the victims' in-court identifications.  These claims were not raised on appeal and were presented only to the California Supreme Court in a petition for a writ of habeas corpus, which was denied summarily without citation or comment.

> B.   Applicable Federal Law

The erroneous admission of evidence is not grounds for federal habeas relief unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process.  See Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999); Colley v. Summer, 784 F.2d 984, 990 (9th Cir. 1986), cert. denied, 479 U.S. 839 (1986).  Failure to comply with State rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds.  See Henry, 197 F.3d at 1031; Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991).  While adherence to State evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is certainly possible

7

to have a fair trial even when State standards are violated;
conversely, State procedural and evidentiary rules may countenance
processes that do not comport with fundamental fairness.  See
Jammal, 926 F.2d at 919 (citing Perry v. Rushen, 713 F.2d 1447,
1453 (9th Cir. 1983), cert. denied, 469 U.S. 838 (1984)).

In order to obtain habeas relief on the basis of an
evidentiary error, the petitioner must also show that the error was
prejudicial under Brecht v. Abrahamson: that the error had "'a
substantial and injurious effect' on the verdict." Dillard v. Roe,
244 F.3d 758, 767 n.7 (9th Cir. 2001)(citing Brecht, 507 U.S. at
623).

C.    Analysis

1.    Qualification of Cynthia Hall as a DNA Expert

The Santa Clara County DNA unit prepared a DNA analysis of
samples of cell material that were taken from the black nylon mask
found inside Ms. Cusick's abandoned car.  At trial the court
accepted Cynthia Hall, who analyzed the DNA, as an expert in DNA
analysis, and admitted her testimony regarding the method used to
analyze the DNA, and the results of the analysis.  On appeal,
Petitioner did not challenge the admissibility of DNA evidence.
Rather, he argued that Ms. Hall was unqualified and did not possess
the data needed to substantiate her assumptions.[2]  With respect to

_____

[2]Before addressing the claims on the merits, the court of appeal
noted that at trial defense counsel had not objected to Hall's
qualification as an expert in DNA analysis or to the procedures she had

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

Ms. Hall's qualifications, the court wrote:

> [T]he trial court did not err, and did not abuse its
> discretion, in qualifying Hall as an expert in DNA
> analysis.  Hall had been a criminalist for four years in
> the DNA unit of the Santa Clara County crime laboratory,
> where she received in-house training and attended
> specialized training courses at the California
> Criminalistics Institute in Sacramento.  Hall also holds
> a bachelor of science degree in biochemistry, which is a
> requirement in performing DNA analysis, and had satisfied
> the requirements for performing DNA analysis prescribed
> by the Technical Working Group on DNA Analysis Methods.
> Most importantly, Hall had been qualified as an expert in
> DNA analysis 25 times.
>
> Based on these qualifications, the trial court did not
> abuse its discretion in qualifying Hall as a DNA analysis
> expert.  "'A person is qualified to testify as an expert
> if he has special knowledge, skill, experience, training,
> or education sufficient to qualify him as an expert on
> the subject to which his testimony relates.'  [Citation.]
> The trial court is given considerable latitude in
> determining the qualifications of an expert and its
> ruling will not be disturbed on appeal unless a manifest
> abuse of discretion is shown.  [Citations.]"  (<u>People v.
> Kelly</u>, 17 Cal. 3d [24,] 39 [(1976)].)

Opinion at 5.

Here, Petitioner does not provide specific reasons why Ms.

Hall was not qualified as an expert.  Rather, he maintains that

"the hearing on her expertise, experience and general knowledge, RT

303-04, was only perfunctory," and that "her lack of knowledge and

---

used in performing that analysis.  The court wrote: "Defendant's failure
to object waived the objection.  (<u>People v. Cudjo</u> (1993) 6 Cal.4th 585,
622)."  Opinion at 4.  However, the court proceeded to address the
claims on the merits.  Accordingly, this Court is not precluded from
considering the merits of the claims.  <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S.
797, 801 (1991)(if the State court does not rely on a potential
procedural bar but instead considers the federal claim on the merits,
there is no procedural default, and the federal court may consider the
claim).

the weakness of her statistical contentions were not explored."
(Pet's Amended Supplemental Habeas Brief (Pet's Supp. Brief), Claim
2.)   The latter reference is to the fact that Ms. Hall made a
mathematical error in calculating the likelihood that the DNA
profile in question would be found in an African-American in the
population, which, as discussed further below, actually was in
Petitioner's favor.

A federal habeas court may grant the writ if it concludes that
the State court's adjudication of the claim "resulted in a decision
that was based on an unreasonable determination of the facts in
light of the evidence presented in the state court proceeding."  28
U.S.C. § 2254(d)(2).   The State court's determination of the facts
is "dressed in a presumption of correctness," Taylor v. Maddox, 366
F.3d 992, 999-1000 (9th Cir. 2004), which can be rebutted only by
clear and convincing evidence.   See 28 U.S.C. § 2254(e)(1).

Here, the State court's determination regarding Ms. Hall's
qualifications as an expert in DNA analysis was reasonable in light
of the evidence presented at trial.   The fact that Ms. Hall made a
mathematical error (which accrued to Petitioner's benefit) is not
clear and convincing evidence which rebuts the presumption of
correctness of the court's factual findings.   Moreover, Petitioner
had a full, fair and complete opportunity to challenge Ms. Hall's
qualifications at trial, even if counsel did not take advantage of
that opportunity.

10

United States District Court

For the Northern District of California

The State court's determination that Ms. Hall was qualified as an expert witness was not an unreasonable determination of the facts in light of the evidence presented at trial.  28 U.S.C. § 2254(d)(2).  Accordingly, Petitioner is not entitled to habeas relief on this claim.

> 2.  <u>Admission of DNA evidence</u>

In his first and third claims for habeas relief, Petitioner contends that the trial court erred in admitting the DNA evidence because of insufficient evidence of its scientific reliability, in violation of his rights under the Fourteenth Amendment.

Ms. Hall testified in general regarding the methodologies and procedures used to gather and analyze DNA for comparative purposes in criminal cases.  She also testified about the specific procedures used at the Santa Clara County DNA unit, and about the steps she took when analyzing the DNA in Petitioner's case.  Ms. Hall concluded that the "nine allele profile" that had been found both in Petitioner's DNA and on the cell sample taken from the black nylon mask had a frequency of "one in two times ten to the eleventh power (i.e., 200,000,000,000)," or "one in 200 million," in the African-American population.

On appeal, Petitioner argued that Ms. Hall had not shown that the methods of DNA typing which she used met the requirements for admissibility under California law.  He also argued that the jury should not have been allowed to rely on Ms. Hall's testimony

because "[t]he finer points of DNA analysis . . . were not mentioned." (Pet's Supp. Brief, Claim II.)  Finally, he argued that Ms. Hall's testimony was not reliable because she had erred in her math regarding the frequency of the nine allele profile in the population, in that two times ten to the eleventh power gives a frequency of one in 200 billion, not one in 200 million.

The Court of Appeal rejected Petitioner's claims, finding as follows:

> As to the system and procedure used in analyzing the DNA evidence in this case, Hall testified as follows: "[T]he first step is to take either a blood sample, or an item of evidence, and extract DNA from that item, which consists of putting a small amount of sample in a tube and adding different chemicals, which releases the DNA from the cell.  That's then separated, via a filter to separate the DNA from the rest of the cellular material. [¶]  At that point, the DNA sample is processed through P.C.R. transaction.  The process of amplification is to take the small amount of DNA and basically just copy it over and over again, basically like a zerox [sic] machine, in order to obtain several copies of the small portion of the DNA.  This amplified, or copied DNA, is then put through a process called electrophoresis, which separates out different strands of DNA, based on its size.  And those different sizes of DNA can be assigned a DNA type, which are the results which are produced in our report."
>
> Hall went on to explain the validation or quality control that her DNA unit used to ensure that the procedure employed was accurate, reliable, and conformed to the scientific community's standards: "There's actually several different criteria that have to be met.  The first is a validation of the procedure.  And there's two different types of validation; one is the developmental validation, which is performed by the specific company which produces the DNA type of kits; and the second validation is an internal validation, which every lab is required to perform before implementing the technology in

12

United States District Court

For the Northern District of California

case work.  [¶]  There are several different types of samples that have to be tested.  Adjudicated cases have to be looked at, old proficiency samples have to be looked at, specimens, different tissue types from the same individual, repeated tests, both within a lab; for example, more than one analyst types the same sample, to ensure that they are obtaining the same results; it's also looked at the accordance between labs.  [¶]  So a sample is submitted to one lab, and also submitted to another lab, to ensure that the same types are being obtained for each.  Each analyst, themselves, are required to perform a series of proficiency tests, or unknown samples.  [¶]  To ensure that analyst is able to obtain the correct result, and is following the correct procedure, our laboratory completed an internal validation, along with the developmental validation done by the company.  So far as quality control procedures within the procedure, itself, there are several different control samples, or blanks, that are run with every case sample.  A contraction control, which consists of all the agents used with DNA, without the DNA to make sure there are no DNA within the reagents; two different reamplification controls; one is a positive DNA amplification control to make sure that DNA sample is coming up with the correct DNA type; and a negative amplification control to make sure that there is no DNA type obtained, in the sample, in other reagents, or other samples, or any other means."

Hall testified that in analyzing the samples in this case and making her calculations, she followed the validation and review procedures she had described.  We are persuaded that on this record Hall's qualifications and the procedure of DNA analysis employed by her both met the standard of admissibility for expert evidence.  Consequently, the trial court did not err and did not abuse its discretion in qualifying Hall as an expert witness on DNA analysis and admitting into evidence her testimony on the subject.

Defendant complains that, "[w]hen asked how frequently the nine allele profile would be found for an African-American in the population, Hall defined that as one in two times ten to the eleventh power (i.e., 200,000,000,000), which in her calculation was then stated to be one in 200 million or one in 200 million African-Americans."

13

> Hall erred in her math, because one in two times ten to
> the eleventh power gives a frequency of one in 200
> billion, not one in 200 million.  However, the error
> favored defendant's chances of having been misidentified,
> and so was harmless.  Hall did not err, and there is no
> claim that she did, in stating that the chance that
> someone other than defendant was the donor of the DNA
> material on the black nylon mask was one in two times ten
> to the eleventh power.

Opinion at 5-7.

This Court need not decide whether the admission of Ms. Hall's testimony was error under California law.  See Dillard, 244 F.3d at 766.  Even if it was, to obtain habeas relief Petitioner must show that the admission of the DNA evidence "rendered the trial so fundamentally unfair as to violate due process."  Id. (citing Windham v. Merkle, 163 F.3d 1092, 1103 (9th Cir. 1998)).  Here, it did not.  The other evidence against Petitioner was abundant: Petitioner's fingerprints were lifted from the can of pears found in Ms. Cusick's car, Petitioner had Ms. Cusick's driver's license and keys in his pockets when he was arrested, the gun found in the car that Petitioner was driving when he was arrested was identified by Ms. Cusick and Ms. Lingenfelter as the gun used in the carjacking, Petitioner was wearing a black baseball cap at the time of his arrest and Ms. Cusick testified that at the time of the carjacking the perpetrator was wearing a black baseball cap, and Ms. Cusick and Ms. Lingenfelter identified Petitioner as the perpetrator at trial.  Because no constitutional violation occurred, the determination of the California Court of Appeal was

14

not contrary to, or an unreasonable application of, clearly

established Supreme Court precedent.  See id. at 767 (citing 28

U.S.C. § 2254(d)(1)).  Accordingly, Petitioner is not entitled to

habeas relief on this claim.

### 3.  Admission of Evidence of Uncharged Crimes

The prosecutor introduced evidence that two days after the

Mountain View carjacking Petitioner robbed Kady Cheung, an employee

at a restaurant in Berkeley, and carjacked a Ford Bronco from its

owner, Jose Torres, a few minutes later.  The Mountain View car was

recovered in Berkeley about a block from the subsequent car theft.

Petitioner and Ms. Grubbs were arrested in the Bronco the next day

in San Francisco.  A gun identified by Ms. Cusick, Ms. Lingenfelter

and Ms. Cheung was found in the center console of the Bronco.  No

charges were brought against Petitioner based on this evidence.

Petitioner maintains that admission of the evidence of the

uncharged bad acts was unduly prejudicial and denied him the right

to a fair trial.

Permitting a jury to hear evidence of prior crimes or bad acts

may violate due process.  See Marshall v. Lonberger, 459 U.S. 422,

438 n.6 (1983); Fritchie v. McCarthy, 664 F.2d 208, 212 n.1 (9th

Cir. 1981) (citing Spencer v. Texas, 385 U.S. 554, 561 (1967)).

Again, however, a State court's procedural or evidentiary ruling is

not subject to federal habeas review unless the ruling violates

federal law, either by infringing upon a specific federal

15

United States District Court

For the Northern District of California

constitutional or statutory provision or by depriving the defendant

of the fundamentally fair trial guaranteed by due process.  See

Pulley v. Harris, 465 U.S. 37, 41 (1984); Jammal, 926 F.2d at 919-

20.

The admission of other crimes evidence violates due process

where there are no permissible inferences the jury can draw from

the evidence, in other words, no inference other than one that the

defendant's conduct in the case at issue was in conformity with his

previous conduct.  See McKinney v. Rees, 993 F.2d 1378, 1384 (9th

Cir. 1993); Jammal, 926 F.2d at 920.  The relevance of the evidence

of other bad acts to motive or intent, the opportunity for the jury

to weigh the credibility of the witness's account of the other bad

acts, and the judge's use of cautionary jury instructions to limit

the jury's consideration of the other bad acts all are factors a

federal court may consider to determine whether a due process

violation occurred.  See, e.g., Terrovona v. Kincheloe, 912 F.2d

1176, 1180-81 (9th Cir. 1990) (admission of other bad act testimony

did not violate due process where trial court balanced probative

weight against prejudicial effect and gave jury cautionary

instruction), cert. denied, 499 U.S. 979 (1991); Gordon v. Duran,

895 F.2d 610, 613 (9th Cir. 1990) (admission of uncharged crimes

did not violate due process where trial court gave limiting

instruction to jury, jury was able to weigh witness's credibility

and evidence was relevant to defendant's intent); Butcher v.

16

Marquez, 758 F.2d 373, 378 (9th Cir. 1985) (admission of uncharged

offenses does not violate constitutional rights where jury had

opportunity to weigh credibility of complaining witness and judge

admonished jury to consider incident only as evidence of intent,

not as evidence of bad character).  Accordingly, a federal court

cannot disturb on due process grounds a State court's decision to

admit evidence of prior crimes or bad acts unless the admission of

the evidence was arbitrary or so prejudicial that it rendered the

trial fundamentally unfair.  See Walters v. Maass, 45 F.3d 1355,

1357 (9th Cir. 1995); Colley v. Sumner, 784 F.2d 984, 990 (9th Cir.

1986).

     At a pretrial in limine hearing, defense counsel moved to

exclude evidence of the uncharged bad acts.  In response, the

prosecutor argued that the series of events beginning with the

robbery in Berkeley and ending with the taking of the Bronco by

force was highly probative of Petitioner's identity because it

would show that he was in possession of Ms. Cusick's car when he

dropped Ms. Grubbs off shortly before he committed the robbery, and

when he returned to pick her up shortly thereafter he was driving

the Bronco.

     With respect to the carjacking of the Bronco, the trial court

found that

          the probative value of that information outweighs the
          prejudicial affect [sic], because of the proximity and
          time and place.  And I think it explains some surrounding

17

**United States District Court**

For the Northern District of California

1    circumstances, and also corroborates Ms. Grubbs's
2    testimony, if it is true.  [¶]  So I am going to allow
     it.  But I don't think we need to go on at length about
3    it either, [Ms. Prosecutor].  You know, I don't expect
     you to hammer it into the ground.
4  RT 41-2.

5
6       Then, turning to defense counsel, the court stated that if

7  requested she would give a limiting instruction to the jury at the

8  time the evidence came in.

9       With respect to the evidence of the Berkeley restaurant

10 robbery, the court also found that its probative value outweighed

11 any prejudicial effect.  In so doing, the court cautioned the

12 prosecutor that all that should come in was "just what happened.

13 In other words, no great detail, except for the time, and the fact

14 that there was a robbery, and, you know, any identification."  RT

15

16 44-5.

17       With respect to both uncharged acts, the court then summarized

18 that the purpose of admitting the evidence was to establish

19      the identity of the person who did it, [more] than any
20      other factors.  It establishes the defendant's need to,
        if he, in fact, did this, to get out of there quickly,
21      and why he did.  The need to take the car and why he
        showed up in one car, rather than having had the other
22      car, et cetera, et cetera.

23 Id. at 45.

24       At trial Ms. Cheung and Mr. Torres testified.  When

25 instructing the jury, the trial court expressly discussed the

26
27 limited purposes for which the testimony could be considered.  RT

28

                                   18

510-12.

Thus, the trial court carefully weighed the probative value of the evidence against its possible prejudicial impact, the jury was able to assess the credibility of the witnesses, and the trial court instructed the jury on the limited purposes for which the evidence could be considered.  Petitioner has not established the existence of a due process violation, and the State court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Accordingly, this claim for habeas corpus relief is denied.

>        4.   Admission of Backpack, Fingerprints,
>             and Parking Citations

In claims thirteen through fifteen, Petitioner challenges the trial court's admission into evidence of a backpack found in Ms. Cusick's car, on which the name "Joshua Johnson" was written, of fingerprint evidence lifted from the can of pears retrieved from Ms. Cusick's car, and of computer copies of three parking citations issued to Ms. Cusick's car in Berkeley.

Petitioner argues that the backpack and the fingerprints lifted from the can of pears should not have been admitted into evidence because seventeen days passed from the time Ms. Cusick's car was carjacked until it was recovered and delivered to the police, and any evidence taken from the car therefore had been

**United States District Court**
For the Northern District of California

vulnerable to tampering during that period.[3]  He also makes claims
of tampering by the police when they dusted the car and the items
therein for fingerprints, and removed the items from the car.
(Pet.'s Trav., Ex. 10(B)-(C).)  Petitioner provides no facts which
support his suspicions that this evidence was planted.  His
speculation is not enough to substantiate his claim that the
evidence was unreliable and should not have been admitted.  See
Walters, 45 F.3d at 1358 (mere suspicion and speculation cannot
support logical inferences).

Petitioner challenges the reliability of the parking citations
admitted at trial because of discrepancies between those citations
and the citations which Petitioner had received during pretrial
discovery.  Defense counsel objected to admission of the citations
at trial on the ground of "lack of authenticity" under California
Evidence Code section 1500.5 (Best Evidence Rule).[4]  In response,
the prosecutor explained that the discrepancies had occurred due to
a computer error, and that all the copies presented in court were

---

[3] Quoting the California Court of Appeal's opinion, Respondent's
brief states that Ms. Cusick's car was reported abandoned by police and
towed  on July 27, 1998.  Resp.'s Br. 2.  However, her car was actually
reported and towed on July 23, 1998, and recovered by Ms. Cusick on July
27, 1998.  RT 168, 225.  Counsel for the prosecution and the defense
stipulated that after Ms. Cusick was notified that her car had been
found and she went to retrieve it, neither she nor her father touched,
removed or added any item to the car or trunk, and only touched the
items necessary to operate and drive the car from Berkeley to Mountain
View.

[4] California Evidence Code section 1500.5 was repealed and replaced
by section 1520 in 1998.  At the time of Petitioner's trial, section
1520 provided, "The content of a writing may be proved by an otherwise
admissible original." Cal. Evid. Code § 1520.

complete and accurate reflections of the tickets as originally issued.   The court allowed the citations into evidence.   As with the backpack and fingerprint evidence, Petitioner's claim that the citation discrepancies indicated evidence-tampering is supported by nothing more than speculation.

Whether the backpack, fingerprint and citation evidence was admitted properly under California law is not pertinent to this Court's analysis.   See Dillard, 244 F.3d at 766.   A federal court will interfere only if it appears that the admission of evidence violated fundamental due process and the right to a fair trial. Henry, 197 F.3d at 1031.   Here, other than speculation, Petitioner provides no basis for questioning the integrity of the police investigation and recovery of evidence, and he fails to demonstrate that admission of the evidence rendered his trial fundamentally unfair.   The State court's denial of these claims for relief was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.   Accordingly, Petitioner is denied habeas relief on claims thirteen, fourteen and fifteen.

5.   Witness identifications

Petitioner argues that the in-court identifications of him by Ms. Cusick and Ms. Lingenfelter were impermissibly suggestive and insufficiently reliable, in violation of due process.   At trial, both Ms. Cusick and Ms. Lingenfelter testified about their difficulty seeing the face of the suspect at the time of the carjacking because of the darkness and the fact that he was wearing

United States District Court

For the Northern District of California

a black nylon mask, but they also stated that they saw portions of his face, that he had "dark" eyes, and that he was African-American. When presented with a six-man photographic lineup approximately a month after the carjacking, neither Ms. Cusick nor Ms. Lingenfelter chose Petitioner as the suspect and instead identified others. However, both identified Petitioner at the preliminary hearing and at trial, where he was the only African-American man.

Petitioner also challenges his in-court identification by Ms. Cheung, the victim of the Berkeley restaurant robbery.[5] Shortly after the robbery, police showed Ms. Cheung a single photograph of a person other than Petitioner and she tentatively identified the photograph as depicting the robber. A few days later, police showed her a photographic lineup of several individuals and Ms. Cheung identified Petitioner as the robber. Ms. Cheung did not appear at the preliminary hearing and so did not identify Petitioner at that time. On the day of her in-court appearance at trial, she rode in the elevator with Petitioner, who was escorted by two officers and in restraints. In court, Ms. Cheung made a positive identification of Petitioner from the stand. On cross-examination defense counsel questioned Ms. Cheung regarding the reliability of her identification of Petitioner. Ms. Cheung

---

[5]Petitioner also argues improper identification by Mr. Torres, the owner of the Bronco, but Mr. Torres failed to identify Petitioner at trial, so there is no merit to this claim.

22

admitted that she had seen Petitioner in the elevator in restraints, but testified that she had not based her in-court identification of him on that encounter.  RT 203-05.

Due process protects against the admission of evidence derived from suggestive pretrial identification procedures.  Neil v. Biggers, 409 U.S. 188, 196 (1972).  Identification testimony is inadmissible as a violation of due process only if (1) a pretrial encounter is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification, and (2) the identification is not sufficiently reliable to outweigh the corrupting effects of the suggestive procedure.  See Van Pilon v. Reed, 799 F.2d 1332, 1338 (9th Cir. 1986).  To prevail on habeas review, a petitioner must show that the identification procedure used in the case was "'so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law.'"  Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (quoting Stovall v. Denno, 388 U.S. 293, 301-02 (1967)).

At trial, Petitioner did not attack the identification testimony of any witness as having resulted from a suggestive pretrial identification procedure.  Rather, defense counsel examined the witnesses with respect to their opportunity to observe and the conditions surrounding the events.  At closing argument, defense counsel generally discussed the problems inherent in identifying someone under stressful circumstances, particularly

23

when the identification is cross-racial.  RT 557-60.  He then discussed each of the three eyewitnesses who had identified Petitioner, and explored the discrepancies and difficulties with their testimony.  RT 560-63, 564-69.  Counsel concluded that under "close scrutiny" the identifications were "troublesome and, basically, unreliable."  RT 569.

The State court's rejection of Petitioner's witness identification claims was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented at trial.  Accordingly these claims for relief are denied.

II.   WRONGFUL EXCLUSION OF EVIDENCE

A.   Background

Petitioner states that he normally wears eyeglasses, but the carjacking and robbery suspect did not.  Based on these facts, in claims twenty-one and twenty-two Petitioner complains that he was made to wear his eyeglasses for the photographic lineup but he was not allowed to wear the eyeglasses or present evidence of his prescription for eyeglasses at trial.  Although his argument is not easily deciphered, he appears to argue that jail officials allowed him access to his eyeglasses so as to create a suggestive photographic lineup, and then denied him access to them so as to deny him a fair trial.

24

B.    <u>Applicable Federal Law</u>

As discussed above, to prevail on habeas review, a petitioner must show that the identification procedures used in the case were "'so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law.'"  <u>Johnson</u>, 63 F.3d at 929 (quoting <u>Stovall</u>, 388 U.S. at 301-02).  In addition, the exclusion of evidence does not violate the Due Process Clause unless "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  <u>Montana v. Egelhoff</u>, 518 U.S. 37, 43 (1996).  The defendant must establish that his right to have the jury consider the excluded evidence in the case was a "fundamental principle of justice."  <u>See</u> <u>id.</u>

C.    <u>Analysis</u>

The Court finds no merit to Petitioner's claims.  First, as discussed above, Petitioner was not identified by either Ms. Cusick or Ms. Lingenfelter from the photographic lineup.  Thus, there can be no prejudice attributed to the fact that he was wearing his eyeglasses.  Second, Petitioner provides no factual basis for the proposition that the victims would not have been able to identify him at trial if he had been wearing his glasses, nor does he cite any legal precedent to the effect that the prosecution could not have asked him to remove his eyeglasses in order for the victims to attempt to identify him.  The rejection of these claims by the

United States District Court

For the Northern District of California

State court was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Accordingly, these claims for habeas relief are denied.

III. ADMISSION OF PRIOR TESTIMONY OF UNAVAILABLE WITNESS

A.  <u>Background</u>

In claim ten, Petitioner claims that the trial court's admission of the preliminary hearing testimony of Angela Grubbs violated his rights under the Confrontation Clause.  Petitioner argues that the prosecution failed to exercise due diligence in attempting to locate Ms. Grubbs to testify at trial, and that the trial court erred in finding her unavailable and allowing her preliminary hearing testimony be read instead.

In claim eleven, Petitioner urges that he was prejudiced by the manner in which Ms. Grubbs's preliminary hearing testimony was read to the jury.  Petitioner claims that the Deputy District Attorney who read Ms. Grubbs's testimony before the jury appeared to be "a very all-american [sic], beautiful looking person, female caucasian, professional, in a business suit, well groomed, articulate Deputy D.A., who read these parts and turned and smiled to the jury . . ." which projected an erroneous air of credibility with respect to Ms. Grubbs.  (Pet's Supp. Brief, Claim XI.) Petitioner also claims that providing a photograph of Ms. Grubbs during jury deliberation, but not during the trial when her testimony was read, was prejudicial.

B.  <u>Applicable Federal Law</u>

26

**United States District Court**

For the Northern District of California

1   The Confrontation Clause applies to all out-of-court

2   testimonial statements offered for the truth of the matter

3   asserted, i.e., "testimonial hearsay." Crawford v. Washington, 541

4   U.S. 36, 51 (2004).  The Supreme Court has not articulated a

5   comprehensive definition of testimonial hearsay, but "[w]hatever

6   else the term covers, it applies at a minimum to prior testimony at

7   a preliminary hearing, before a grand jury, or at a former trial;

8   and to police interrogations." Id. at 68.  Out-of-court statements

9   by witnesses that are testimonial hearsay are barred under the

10  Confrontation Clause unless the witness is unavailable and the

11  defendant had a prior opportunity to cross-examine the witness.

12  Id. at 59.  The government must prove that the witness is

13  unavailable.  Terrovona v. Kincheloe, 852 F.2d 424, 427 (9th Cir.

14  1988).  This requires that the prosecution make a good faith effort

15  to obtain the witness's presence.  Barber v. Page, 390 U.S. 719,

16  724-25 (1968).

17  C.   Analysis

18       1.   Witness unavailability

19  Ms. Grubbs testified at the preliminary hearing in March, 1999

20  and was subject to cross-examination by Petitioner.  RT 399-425.

21  The prosecution intended to call Ms. Grubbs at trial to testify

22  against Petitioner based on their arrest together in Berkeley on

23  July 13, 1998 and her preliminary hearing testimony.  Upon being

24  contacted after the preliminary hearing, Ms. Grubbs was very

25  cooperative and stated she had no problem testifying at the jury

26  trial.  RT 355.  However, because Ms. Grubbs was a transient

27

28

27

**United States District Court**
For the Northern District of California

without a permanent address, the only way to locate her was through her mother.  Id.  The prosecution claims there was no reason to believe Ms. Grubbs would be unavailable because they had contacted and successfully produced her for the preliminary hearing in the same manner.  RT 358.

A subpoena for Ms. Grubbs was issued on May 14, 1999.  RT 343. Detective Tony Najarro attempted to locate her by calling the phone number of the residence where Ms. Grubbs was picked up for the preliminary hearing, but it was disconnected.  RT 345, 347. Detective Najarro also called Ms. Grubbs's mother's house, but was informed by another female resident that the mother was not at home.  RT 346.  Over the next few days, Detective Najarro tried calling the mother four or five more times, but she never returned his calls.  RT 346, 351.  From May 18 to May 20, 1999, Detective Najarro made several trips to Berkeley to visit Ms. Grubbs's earlier apartment address and her mother's residence, but was unable to locate Ms. Grubbs or her mother.  RT 346.

On May 26, 1999, Detective Najarro called Officers Rego and Broberg, of the Berkeley and San Francisco police departments respectively, inquiring about Ms. Grubbs's whereabouts.  RT 347-348.  He left a message with Officer Broberg who informed him that he didn't think she would be in San Francisco, but if she was, Detective Najarro should check the Tenderloin district.  RT 348. Detective Najarro also ran State-wide and local checks through the police system which determined that Ms. Grubbs was not in custody.

RT 348.

At trial, Petitioner's counsel argued that the prosecution's attempts to locate Ms. Grubbs were insufficient to satisfy due diligence because they failed to determine if she was on probation, receiving welfare, or had minor children.  RT 353.  Petitioner also raised the issue that, because the prosecution was aware of her criminal record, drug abuse, and transient lifestyle, a few phone calls and visits were inadequate.  RT 356-57.  The trial court found that, under the circumstances surrounding this particular witness, the People exercised due diligence in trying to procure her.  RT 359.

The issue of the due diligence of the prosecution's attempts to procure a preliminary hearing witness for trial, in order to determine the admissibility of his or her preliminary hearing testimony, is a factual question to be determined according to the circumstances of each case.  See Acosta-Huerta v. Estelle, 7 F.3d 139, 142-43 (9th Cir. 1992).  Here, the trial court's finding of due diligence based on the specific facts and circumstances surrounding Ms. Grubbs's lifestyle and the prosecution's good faith reliance on previously successful means of  serving and procuring Ms. Grubbs was not unreasonable.  Petitioner's argument that more could have been done to locate her does not negate the fact that the prosecution made a good faith effort to locate her, which is all the Confrontation Clause requires.  See Windham v. Merkle, 163 F.3d 1092, 1102 (9th Cir. 1998).

Moreover, Petitioner had an opportunity to cross-examine Ms.

Grubbs at the preliminary hearing and effectively did so.  Ms.
Grubbs's credibility based on her criminal history and drug abuse
was addressed by both sides, RT 399, 416-17, along with the
possibility of bias due to fear.  RT 418, 421.  Ms. Grubbs's
testimony at the preliminary hearing was given under circumstances
similar to a trial because she was under oath, Petitioner was
represented by counsel, the proceedings were conducted before the
court, and a judicial record of the hearings was produced.

Thus, the State court's rejection of this claim was not based
on an unreasonable determination of the facts in light of the trial
record, and Petitioner's claim alleging wrongful admission of Ms.
Grubbs's preliminary hearing testimony is denied.  <u>See</u> 28 U.S.C.
§ 2254(d)(2).

2.   <u>Reading of Prior Testimony</u>

Petitioner alleges that he was prejudiced by the manner in
which Ms. Grubbs's prior testimony was read to the jury, as well as
by the court's failure to supply the jury with a photograph of Ms.
Grubbs until after her testimony was read.  However, Petitioner
fails to cite any Supreme Court authority to support his claim.  If
there is no Supreme Court precedent that controls on the legal
issue raised by a petitioner in State court, the State court's
decision cannot be contrary to, or an unreasonable application of,
clearly-established federal law.  <u>Stevenson v. Lewis</u>, 384 F.3d
1069, 1071 (9th Cir. 2004).  Moreover, the court's decision to
permit the deputy district attorney to read the transcript had no
substantial or injurious effect on the jury's verdict because the

United States District Court

For the Northern District of California

jury was aware of Ms. Grubbs's prior convictions for theft offenses, RT 399, was presented with a photograph of Ms. Grubbs, RT 570, and heard closing arguments that put her credibility in doubt. RT 570-75.  Thus, the State court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, and this claim for habeas relief is denied.

IV.  PROSECUTORIAL MISCONDUCT

    A.   Background

    Petitioner claims that the prosecutor engaged in constitutionally impermissible misconduct by failing to turn over exculpatory evidence to the defense.  First, he claims that the prosecution failed to turn over a San Francisco booking sheet that listed the items found by police on Petitioner's person when he was arrested.  Petitioner further claims that the loss of a portion of his trial transcripts led to the suppression of Santa Clara booking sheets that would have been favorable to his appeal.  Finally, he asserts that the prosecution failed to provide a photograph of a person whom an eyewitness initially identified as the perpetrator.

    B.   Applicable Federal Law

    Prosecutorial misconduct is cognizable in federal habeas corpus.  The appropriate standard of review is the narrow one of due process and not the broad exercise of supervisory power.  See Darden v. Wainwright, 477 U.S. 168, 181 (1986).  The right to due

process is violated when a prosecutor's misconduct renders a trial "fundamentally unfair."  See id.; Smith v. Phillips, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor").

If a defendant so requests, the government has an obligation to surrender favorable evidence that is "material either to guilt or to punishment."  Brady v. Maryland, 373 U.S. 83, 87 (1963).  "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  United States v. Bagley, 473 U.S. 667, 682 (1985) (plurality opinion); accord id. at 685 (White, J., concurring).

If the defense does not request such information, the prosecutor must nonetheless turn over any evidence that might create a reasonable doubt that otherwise would not exist.  See United States v. Agurs, 427 U.S. 97, 112-13 (1976) (omission of such evidence must be evaluated in the context of the whole case and violation of due process occurs when a defendant is denied a fair trial; thus, even minor violations may meet the reasonable doubt requirement in a close case).  However, where the government discloses all the information necessary for the defense to discover the alleged Brady material on its own, the government is not guilty of suppressing evidence favorable to the defendant.  See United

States v. Bracy, 67 F.3d 1421, 1428-29 (9th Cir. 1995).  The
government is likewise under no obligation to search for or turn
over exculpatory evidence not under its control or in its
possession.  See United States v. Plunk, 153 F.3d 1011, 1028 (9th
Cir. 1998) (government does not "possess" or "control" exculpatory
information contained in federal public defender's files).

    C.   Analysis

       1.   Failure to disclose San Francisco
             booking sheet

    Petitioner's first claim of prosecutorial misconduct is that
the prosecutor failed to disclose the booking sheet from
Petitioner's arrest, which he alleges contained exculpatory
information.  Officer Leonard Broberg testified that when he
arrested and searched Petitioner, he found a set of keys in
Petitioner's pocket that Ms. Cusick identified as the keys to her
stolen vehicle.  RT 81; 130-32.  However, the prosecution never
produced a booking sheet, which presumably would have listed the
items found on Petitioner by the arresting officer.  Petitioner
claims, as defense counsel argued in closing, that the keys were
not actually found on Petitioner's person during his arrest.  RT
584-85.  Petitioner asserts that because production of the booking
sheet would have shown that the keys were not listed, it would have
proven this theory and tended to show he was not guilty.

    Petitioner has not presented sufficient evidence to show that
the information in the booking sheet was exculpatory, nor that it
was material.  See Brady, 373 U.S. at 87.  He merely speculates

33

United States District Court

For the Northern District of California

that the booking sheet would not have listed the victim's keys.
Moreover, even if the jury had concluded that Ms. Cusick's keys
were not found on Petitioner when he was arrested, it nevertheless
could have convicted him based on the eyewitness, DNA, and other
evidence implicating him.  Therefore, Petitioner has failed to show
that the booking sheet was exculpatory or material.  The State
court's denial of this claim was not contrary to, or an
unreasonable application of, clearly established federal law.
Accordingly, this claim for habeas relief is denied.

        2.   <u>Suppression of Santa Clara County
        booking sheets due to the lost trial
        transcripts</u>

Petitioner asserts that the prosecution impermissibly
suppressed booking sheets from Santa Clara County that were
admitted during the testimony of Officer Ortiz.  The transcript of
Officer Ortiz's testimony was lost by the court reporter.
Petitioner argues that the loss of these transcripts was tantamount
to non-disclosure of the booking sheets and prejudicial to his
appeal.

Petitioner fails to show that the prosecutor engaged in any
misconduct.  Petitioner concedes that the loss of the transcript
was caused by the court reporter, not the prosecution.  Moreover,
the fact that the booking sheets were introduced by the prosecution
at trial negates an inference that the sheets were suppressed or
undisclosed.  Accordingly, the State court's denial of this claim
was not contrary to, or an unreasonable application of, clearly

established Supreme Court precedent, and this claim for habeas relief is denied.

3.   <u>Failure to disclose the photograph identified by Ms. Cheung</u>

Petitioner claims that the prosecutor engaged in misconduct by suppressing a photograph, of someone other than Petitioner, that eyewitness Kady Cheung tentatively identified as the perpetrator of the robbery shortly after the robbery occurred.  At the photographic lineup several days later, Ms. Cheung identified Petitioner.  At trial, although defense counsel questioned Ms. Cheung about her first identification, he did not introduce the first photograph into evidence.  RT 200-04.  Petitioner argues that the photograph constituted exculpatory evidence that was suppressed by the prosecution.

Petitioner fails to prove a <u>Brady</u> violation on this claim. First, Petitioner has not provided any evidence that defense counsel's failure to introduce the photograph resulted from its non-disclosure by the prosecution.  Further, because Ms. Cheung testified that she had originally identified someone other than Petitioner, the fact that the jury did not see the actual photograph is immaterial.  Accordingly, the State court's denial of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, and this claim for habeas relief is denied.

35

V.   ERRONEOUS JURY INSTRUCTIONS

A.   Background

Petitioner raises three claims of instructional error.  First, he maintains that the trial court erred when it instructed the jury on its responsibility to inform the court of potential instances of juror misconduct.  Next, he claims he was prejudiced by the court's cautionary instruction to the jury not to consider the fact that Petitioner had been seen in restraints.  Finally, he objects to the court's use of his name when instructing the jury on the offenses charged in the information.

B.   Applicable Federal Law

A challenge to a jury instruction solely as an error under State law does not state a claim cognizable in federal habeas corpus proceedings.  See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).  To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.  See id. at 72; Cupp v. Naughten, 414 U.S. 141, 147 (1973); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].'").  The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the

United States District Court

For the Northern District of California

trial record.  See Estelle, 502 U.S. at 72.  In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process.  See United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)).

C.  Analysis

1.  CALJIC No. 17.41.1

Petitioner's jury was instructed pursuant to CALJIC No. 17.41.1 as follows:

> The integrity of a trial requires that jurors at all
> times during their deliberations conduct themselves as
> required by these instructions.  Accordingly, should it
> occur that any juror refuses to deliberate or expresses
> any intention to disregard the law or to decide the case
> based on penalty or punishment or any other improper
> basis, it is the obligation of the other jurors to
> immediately advise the court of the situation.

RT 603, 670.

On appeal, Petitioner complained that the instruction violated various federal and State constitutional provisions by infringing on the free speech rights of the jurors and undermining their discretion to disagree and nullify.  After a careful analysis of relevant case law, the court concluded that both the federal and State courts have rejected the principle that jurors are entitled to information about possible punishments and must be instructed on the right to jury nullification.  Agreeing with this rationale, the court addressed CALJIC No. 17.41.1:

37

United States District Court

For the Northern District of California

As to the portion of CALJIC No. 17.41.1 instructing the
jury that they should immediately advise the court of the
situation "should it occur that any juror refuses to
deliberate or expresses an intention to disregard the law
or to decide the case based on penalty or punishment, or
any other improper basis," that instruction no more than
instructs the jurors what their obligation is when any
juror engages in juror misconduct. Because jurors must
apply the law, as instructed by the court, it is
misconduct for a juror to refuse to obey the court's
instruction. Misconduct by a juror taints the integrity
of the judicial process, and should be prevented whenever
possible, and rectified when committed. Yet, because the
jurors deliberate by themselves, they alone would know
when jury misconduct is committed by one or more of them.
It is thus essential that one or more of them report to
the court when one or more of them engage in jury
misconduct. Consequently, an instruction informing the
jurors of this duty and exhorting them to report any jury
misconduct so that the same may be corrected, and the
integrity of the judicial process preserved, is not only
proper, but necessary.

Defendant argues that CALJIC No. 17.41.1 compromises the
jury's privacy, inhibits jury deliberations, and "chills
speech in a forum where 'free and uninhibited discourse'
is most needed." The fear is unfounded. There is no
showing that the jury's privacy in this case was in fact
compromised, or their deliberations inhibited. Defendant
bears the burden of showing that the challenged
instruction in fact prejudiced him.

In any event, any claim of jury privacy must be balanced
against the need to protect the judicial process from
jury misconduct. We do not think the instruction in
question has disturbed that balance. Certainly,
defendant has made no attempt to show that the jury's
right to secrecy in this case outweighs the court's need
to be informed of any jury misconduct or of refusal by
any juror to follow the court's instructions.

We conclude the trial court did not err in giving CALJIC
No. 17.41.1.

Opinion at 10-11.

In <u>Brewer v. Hall</u>, 378 F.3d 952 (9th Cir.) <u>cert. denied</u>, 543

38

United States District Court

For the Northern District of California

U.S. 1037 (2004), the Ninth Circuit rejected a State habeas petitioner's constitutional challenge to CALJIC No. 17.41.1, holding: "It is clear . . . that the California appellate court's holding was not contrary to or an unreasonable application of clearly established Supreme Court precedent, because no Supreme Court case establishes that an instruction such as CALCIC 17.41.1 violates an existing constitutional right." Id. at 955-56.  Here, as in Brewer, Petitioner "has pointed to no Supreme Court precedent clearly establishing that CALJIC 17.41.1--either on its face or as applied to the facts of his case--violated his constitutional rights." Id. at 957.  As the Court of Appeal's rejection of Petitioner's claim was not contrary to or an unreasonable application of clearly established Supreme Court precedent, this claim for habeas corpus relief is denied.

2.   Cautionary instruction on identification

As discussed above, Ms. Cheung identified Petitioner in court as the man who robbed her at the Berkeley restaurant.  She also had selected him in a photographic lineup a few days after the incident.  On cross-examination Ms. Cheung admitted that she had seen Petitioner in an elevator at the courthouse in the custody of two officers and in restraints, but she testified that she did not base her identification in court on that encounter.  There was no suggestion at trial that her sighting of Petitioner was other than

accidental.

In the instructions, the jury was admonished not to consider the fact Petitioner may have been placed in restraints and not to speculate about the reason for restraints.  In determining the issues the jury was told to "disregard this matter entirely."  RT 504.  Petitioner did not object to the instruction on appeal.  The instruction appears to have been a standard one, given in order to prevent prejudice to Petitioner from any speculation by the jury as to why he was in restraints.  In claim twelve, however, Petitioner appears to argue that the instruction also prevented the jury from considering Ms. Cheung's observation of Petitioner in restraints when assessing the credibility of her identification.

Even if the jury instruction erroneously precluded the jury from considering the fact that Ms. Cheung had seen Petitioner in restraints, Petitioner has not shown that the instruction by itself so infected the entire trial that the resulting conviction violates due process.  Ms. Cheung identified Petitioner from a photographic lineup a few days after the robbery and again in the courtroom. She was subjected to cross-examination at trial, and the jury was able to assess her credibility as a witness.  The record does not support an inference that the jury's inability to consider that Ms. Cheung saw Petitioner in restraints had any effect on the verdict.

The State court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme

40

Court precedent, nor was it an unreasonable determination of the facts in light of the evidence presented at trial.  Accordingly, this claim for habeas corpus relief is denied.

> 3.   Use of Petitioner's name in jury
>      instruction

The offenses with which Petitioner was charged in the information were read at the start of trial and again as part of the final instructions.  When reading the charges, the trial court referred to Petitioner by name.  During final instructions, the jury was reminded that in count five Petitioner was charged with possession of a firearm by a former felon, as follows:

> Count five, that in the County of Santa Clara, State of
> California, on or about July 10th, 1998, the said
> defendant, Vance Edward Johnson, committed a felony, to
> wit: a violation of California Penal Code section
> 12021(A)(1), possession of firearm by specified person,
> in that the said defendant who having been convicted of a
> felony, did own and have in his possession, and under his
> custody and control, a firearm, to wit: handgun.

RT 519.

The trial court later instructed on the elements of that offense, stating that the fact that Petitioner was a former felon had been established by stipulation:

> Defendant is accused in count five of having violated
> section 12021 subdivision (A)(1) of the Penal Code, a
> crime.
>
> Every person who having previously been convicted of a
> felony, owns or has in his possession or under his
> custody and control any pistol, revolver or other firearm
> is guilty of a violation of section 12021 subdivision
> (A)(1) of the Penal Code, a crime.

United States District Court
For the Northern District of California

41

> In this case, the previous felony conviction has already
> been established by stipulation so that no further proof
> of that fact is required.  You must accept as true the
> existence of the previous felony conviction.

RT 523.  In claim twenty-three, Petitioner appears to argue that together the instructions were conflicting and prejudicial because they allowed the jury to presume that he possessed a gun.

The Court finds no support in the record for Petitioner's argument.  First, to the extent Petitioner maintains that the use of his name in the instructions was prejudicial, this claim is without merit because the mention of his name was nothing more than a verbatim reading of the charges the jury was to consider, and the charges had been read previously to the jury at the start of trial. Regarding Petitioner's argument that the instruction allowed the jury to presume he had a gun, the jury was advised that Petitioner had plead not guilty and that the prosecution had to prove the case against him beyond a reasonable doubt.  Moreover, the instruction indicated that his status as a former felon had been established but did not assume that he did, in fact, possess the firearm.  In fact, defense counsel explicitly advised the jury that Petitioner's admission to having a prior felony conviction was not an admission that he ever possessed a firearm.  RT 583-84.

The Court must view the challenged instruction in the context of the instructions as a whole and the trial record.  See Estelle, 502 U.S. at 72.  Having done so, this Court finds that the State

42

court's denial of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Accordingly, this claim for habeas relief is denied.

VI.  SENTENCING ERRORS

A.   Background

Petitioner raises two claims of sentencing error.  First, he claims that the trial court's imposition of consecutive sentences for each of the carjacking and robbery convictions violated California's prohibition against double punishment.  Second, he argues that the trial court erred when it relied upon an invalid prior conviction for purposes of California's Three Strikes Law.

B.   Applicable Federal Law

Criminal punishment must comply with due process.  Gardner v. Florida, 430 U.S. 349, 358 (1977).  A federal court may vacate a sentence if it is based on a conviction infected by constitutional error, or exceeds the sentence allowable under State law.  Walker v. Endell, 850 F.2d 470, 476-477 (9th Cir. 1987).  Generally, a federal court may not review a State sentence that is within statutory limits.  Id. at 476.  "Absent a showing of fundamental unfairness," even a State court's "misapplication of its own sentencing laws does not justify federal habeas relief."  Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994).  In evaluating a State conviction, a federal court must defer to the State court's interpretation of applicable State sentencing laws.  Bueno v.

United States District Court

For the Northern District of California

1    <u>Hallahan</u>, 988 F.2d 86, 88 (9th Cir. 1993).

2        C.    <u>Analysis</u>

3            1.    <u>Imposition of Consecutive Sentences</u>

4        Petitioner was convicted for the carjacking and robbery of Ms.

5    Cusick and the carjacking and attempted robbery of Ms.

6    Lingenfelter.  The trial court imposed consecutive life terms for

7    each of these four offenses.  On appeal, Petitioner argued that his

8    sentences for the robbery and the attempted robbery should not have

9    been consecutive to his sentences for the carjackings.  He claimed

10   these sentences violated the prohibition against double punishment

11   in California Penal Code section 654, which provides:

12
13       An act or omission that is punishable in different ways
         by different provisions of law shall be punished under
14       the provision that provides for the longest potential
         term of imprisonment, but in no case shall the act or
15       omission be punished under more than one provision.  An
         acquittal or conviction and sentence under any one bars a
16       prosecution for the same act or omission under any other.

17   The Court of Appeal rejected Petitioner's claim, finding as

18   follows:

19
20       Here, the intent to carjack was clearly separate and
         distinct from the intent to rob the victims of their
21       money.  When defendant approached Cusick's vehicle in the
         manner he did, he evidently had already formed his intent
22       to steal the vehicle.  There is no evidence that
         defendant already knew at that time that Cusick and
23       Lingenfelter had wallets in the car.  Consequently, it
         cannot be said that defendant's intent to carjack
24       included the intent to rob the victims of their wallets.
         Apparently, the intent to rob Cusick and Lingenfelter of
25       their wallets was formed only after defendant knew that
         Cusick had a purse with her, and this was when defendant
26       leaned on the car's door, pointed a gun at Cusick's face,

27

28
                                    44

and told Cusick to "[d]rop your purse, put your keys in the ignition, and get out of the car." This intent came later, and thus was not one with the earlier intent to steal the car, which caused defendant to approach the car masked and armed. That the two intents were separate and distinct is also shown by the fact that when Cusick asked defendant for her purse, defendant replied he needed the money. Money did not appear to be the purpose of the carjacking since after the carjacking, defendant just abandoned the car in Berkeley. Indeed defendant has not argued that the robberies were incidental to the carjacking, or that the carjacking was incidental to the robberies.

We conclude the trial court did not err in imposing four consecutive life terms.

Opinion at 12.

To the extent that Petitioner claims that the State courts erred in their interpretation of the applicability of section 654 he raises an issue of State law which is not cognizable on federal habeas corpus. See Watts v. Bonneville, 879 F.2d 685, 687 (9th Cir. 1989) (alleged violation of section 654 fails to state a basis for federal relief). To the extent he argues a violation of due process based on the prohibition against punishing a defendant for multiple offenses if the offenses stem from the same act, see id., Petitioner has not shown that the State appellate court's finding of separate criminal acts was an unreasonable determination of the facts in light of the trial record. See 28 U.S.C. § 2254(d)(2).

The State court's rejection of Petitioner's consecutive sentencing claim was not contrary to or an unreasonable application of clearly established Supreme Court precedent, nor was it based on

45

United States District Court

For the Northern District of California

an unreasonable determination of the facts in light of the trial
record.  Accordingly, this claim for habeas corpus relief is
denied.

> 2.  <u>Three Strikes Allegation</u>

The jury found that Petitioner had suffered two prior serious
felony convictions, one which was from the State of Florida.  This
finding resulted in sentencing under California's Three Strikes Law
and also resulted in an additional ten-year term.  Petitioner
appears to argue that reliance on the Florida prior was error
because Florida court records show that the sentence was reduced.
This claim states no ground for relief because it does not call
into question the existence or validity of the prior conviction.
Moreover, even if Petitioner is somehow attempting to challenge the
prior conviction's validity, a federal habeas corpus petitioner
generally may not attack the constitutionality of a prior
conviction used to enhance a later sentence.  <u>Lackawanna County
Dist. Attorney v. Coss</u>, 532 U.S. 394, 403-04 (2001).  "[O]nce a
state conviction is no longer open to direct or collateral attack
on its own right because the defendant failed to pursue those
remedies while they were available . . . the conviction may be
regarded as conclusively valid."  <u>Id.</u> at 403.  "If that conviction
is later used to enhance a criminal sentence, the defendant
generally may not challenge the enhanced sentence through a
petition under 2254 on the ground that the prior conviction was

46

unconstitutionally obtained." <u>Id.</u> at 403-4.  An exception to this rule exists where there was a failure to appoint counsel in violation of the Sixth Amendment.  <u>Id.</u>  Here, Petitioner makes no such allegation.  Therefore, Petitioner cannot collaterally challenge the validity of his Florida conviction in this proceeding.

The State court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Accordingly, this claim for habeas relief is denied.

VII. IMPAIRMENT OF THE TRIAL JUDGE

A.   <u>Background</u>

After the first day of evidence the jury was ordered to return at 1:30 the next afternoon.  RT 173.  Following a 3:30 p.m. break on the second day the judge recessed for the rest of the day.  In doing so she stated on the record that she had had "a little surgery" the day before and believed she would have no difficulty returning.  However, the judge discovered that she was hemorrhaging and had to return to the doctor to "get this taken care of."  She expressed her intent to return at 9:00 a.m. the next day.  RT 215.  Court resumed as scheduled the following morning and there were no further delays.  Based on this record evidence, Petitioner asserts that the judge was physically unfit and mentally impaired, resulting in denial of a fair trial.

United States District Court

For the Northern District of California

B.   <u>Applicable Federal Law</u>

Petitioner cites no case law in support of the proposition that a judge's failure to step down from presiding over a trial because of temporary physical impairment amounts to a violation of due process.  Moreover, with respect to the broader category of judicial misconduct, a claim of judicial misconduct by a State judge in the context of federal habeas review does not simply require that the federal court determine whether the State judge committed judicial misconduct; rather, the question is whether the State judge's behavior "rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution."  <u>Duckett v. Godinez</u>, 67 F.3d 734, 740 (9th Cir. 1995) (citations omitted), <u>cert. denied</u>, 517 U.S. 1158 (1996).  A State judge's conduct must be significantly adverse to a defendant before it violates constitutional requirements of due process and warrants federal intervention.  <u>See</u> <u>Garcia v. Warden, Dannemora Correctional Facility</u>, 795 F.2d 5, 8 (2d Cir. 1986).

C.   <u>Analysis</u>

Petitioner has alleged no facts to substantiate a claim that the trial judge's ailment had any effect whatsoever on the fairness of his trial, let alone that it rendered the trial fundamentally unfair.  The State court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  Accordingly, Petitioner is not entitled to habeas

48

corpus relief on this claim.

VIII.  INACCURATE RECORD ON APPEAL

     A.   Background

     Petitioner claims that inaccuracies and omissions in his trial transcript violated his due process rights and prejudiced his appeal.  Respondent concedes that the witness index is inaccurate, and that both sides' opening statements and the testimony of Officer Arturo Ortiz were not recorded.

     B.   Applicable Federal Law

     Although there is no due process requirement that States allow direct appeals of criminal convictions, if State law does permit such appeals, due process and equal protection require that indigent criminal defendants be provided with free transcripts for use in the appeal, or other effective means of obtaining adequate appellate review.  Britt v. North Carolina, 404 U.S. 226, 227 (1971); Griffin v. Illinois, 351 U.S. 12, 18-20 (1956) (per curium).  However, a court need only provide an indigent defendant with "a record of sufficient completeness" to prepare an appeal; irrelevant or extraneous portions of the transcript may be omitted. Mayer v. City of Chicago, 404 U.S. 189, 194-95 (1971).

     A State's failure to provide a full record of a trial may violate a defendant's due process rights and form the basis for federal habeas corpus relief.  See Madera v. Risley, 885 F.2d 646, 648 (9th Cir. 1989).  Two criteria are relevant to this

United States District Court
For the Northern District of California

determination: (1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought; and (2) the availability of alternative devices that would fulfill the same functions as a transcript.  See id. (citing Britt, 404 U.S. at 227 & n.2).  A habeas petitioner must also establish prejudice from the lack of a transcript to be entitled to habeas corpus relief. See id. at 649.

    C.   Analysis

Petitioner argues that his appeal was prejudiced by the inaccuracies and omissions in the trial transcripts.  However, he fails to show what, if any, prejudicial effect they had.  The witness index, although inaccurate, is something that appellate counsel could easily verify and correct.  Although the failure to record opening statements can violate due process, Petitioner fails to show how their omission from the record prejudiced his appeal.

With respect to the testimony of Officer Ortiz, during closing argument the prosecutor referred to the testimony and argued that it established that Officer Ortiz booked Petitioner in Santa Clara County and observed that keys to the car stolen in Mountain View were in his possession, RT 549-550; defense counsel did not contest Officer Ortiz's observation but implied that the keys had not been in Petitioner's possession when he was originally arrested in San Francisco, RT 582-83.  Thus, there was some alternative in the appellate record to a transcript of Officer Ortiz's actual

**United States District Court**

For the Northern District of California

1   testimony.   In any event, Petitioner does not establish that the

2   missing transcript denied him a fair appeal.

3        Petitioner has not made a sufficient showing that the

4   omissions and inaccuracies in the trial record were prejudicial to

5   his appeal.   Accordingly, the State court's rejection of this claim

6   was not contrary to, or an unreasonable application of, clearly

7   established Supreme Court precedent.   This claim for habeas relief

8   is therefore denied.

9

10  IX.   INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

11       A.   Background

12       Petitioner raises myriad claims of ineffective assistance of

13  trial counsel, many of which rely upon counsel's failure to act or

14  to address errors discussed previously in this Order.   For the most

15  part, however, he attacks counsel's representation in general.

16       B.   Applicable Federal Law

17       A claim of ineffective assistance of counsel is cognizable as

18  a claim of denial of the Sixth Amendment right to counsel, which

19  guarantees not only assistance, but effective assistance of

20  counsel.   Strickland v. Washington, 466 U.S. 668, 686 (1984).   The

21  benchmark for judging any claim of ineffectiveness must be whether

22  counsel's conduct so undermined the proper functioning of the

23  adversarial process that the trial cannot be relied upon as having

24  produced a just result.   Id.

25       In order to prevail on a Sixth Amendment ineffectiveness of

26

27

28

United States District Court

For the Northern District of California

counsel claim a petitioner must establish two things.  First, he must establish that counsel's performance was deficient, that is, that it fell below an "objective standard of reasonableness" under prevailing professional norms.  Id. at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient performance, that is, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id.

The Strickland framework for analyzing ineffective assistance of counsel claims is "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis.  See Williams, 529 U.S. at 404-08.

C.  Analysis

A court need not address the question of counsel's deficient performance if it finds that the petitioner was not prejudiced thereby.  See Strickland, 466 U.S. at 697.  To the extent Petitioner argues the ineffective assistance of counsel in conjunction with other claims already denied by the Court in this Order, his argument is without merit because the Court has found that no error or prejudice accrued to Petitioner with respect to those claims.  Moreover, with respect to allegations of misconduct

not addressed in conjunction with other claims in this Order, he has not shown that as a result of any of counsel's actions there is "a reasonable probability that . . . the result of the proceeding would have been different." Id. at 694.

The State court's rejection of Petitioner's ineffective assistance of counsel claim was not contrary to or an unreasonable application of Strickland. Accordingly, this claim for relief is denied.

X.   INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

   A.   Background

Petitioner alleges that appellate counsel was ineffective for failing to obtain a complete and adequate record on appeal, failing to file a State habeas corpus petition in conjunction with the appeal, failing to "raise any crucial issues and assignments of error that arguably might have resulted in reversal," and failing to provide Petitioner with a copy of the California Supreme Court's denial of the petition for review for purposes of Petitioner's federal habeas corpus petition.

   B.   Applicable Federal Law

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. See Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in Strickland.

53

United States District Court
For the Northern District of California

Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).  Petitioner therefore must show that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal.  Id. at 1434 & n.9 (citing Strickland, 466 U.S. at 688, 694).

Appellate counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant.  See Jones v. Barnes, 463 U.S. 745, 751-54 (1983); Gerlaugh v. Stewart, 129 F.3d 1027, 1045 (9th Cir. 1997); Miller, 882 F.2d at 1434 n.10.  The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.  See id. at 1434. Appellate counsel therefore frequently will remain above an objective standard of competence and have caused his client no prejudice for the same reason--because the issue he declined to raise was weak.  See id.

C.   Analysis

Petitioner has failed to show that appellate counsel's alleged errors caused him prejudice.  As discussed in this Order, the incorrect and incomplete record on appeal did not prejudice Petitioner.  And his argument that appellate counsel failed to raise crucial issues on appeal is devoid of any specificity.  To the extent he attempts to incorporate any of the issues addressed in this Order, he is not entitled to relief for the reasons

**United States District Court**

For the Northern District of California

discussed.  Finally, Petitioner's claim that appellate counsel should have filed a State habeas corpus petition in conjunction with his appeal does not present a claim for federal relief.  See Coleman v. Thompson, 501 U.S. 722, 755-57 (1991) (no federal constitutional right to counsel on State collateral review); accord Bonin v. Calderon, 77 F.3d. 1155, 1158 (9th Cir. 1996).

For these reasons, the State court's rejection of Petitioner's claim was not contrary to or an unreasonable application of clearly established Supreme Court precedent.  Accordingly, this claim for habeas relief is denied.

XI.  PENDING MOTIONS

Petitioner has filed a motion for the appointment of counsel (docket no. 52), a motion to engage in discovery (docket no. 49), and a motion asking the Court to direct the United States Marshal to serve third-party subpoenas duces tecum (docket no. 53).  The Court has reviewed the motions and finds no bases for exercising its discretion to appoint counsel, see 18 U.S.C. § 3006A(a)(2)(B) (authorizing the district court to appoint counsel to represent a habeas petitioner whenever "the court determines that the interests of justice so require"), or to allow Petitioner to engage in discovery and issue third-party subpoenas duces tecum, see Rule 6(a) of the Federal Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254 ("a party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if,

and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."). Accordingly, these motions are denied.

CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED, and all pending motions are DENIED (docket nos. 49, 52, 53). The Clerk of the Court shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: 3/29/06

_____
CLAUDIA WILKEN
United States District Judge